## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **TENNESSEE GAS PIPELINE COMPANY, L. L. C.**, a limited liability company of the State of Delaware,<br><br>　　　　**Plaintiff,**<br><br>　　**v.**<br><br>**1,693 Acres of land in the Township of Mahwah, CAROL WEHRAN GREENE, RICHARD C. GREENE, and LINDSEY GREENE BARRETT, fee owners; MICHAEL BRIZZOLARA, fee owner; THE Yaw Paw CAMP ASSOCIATION OF RIDGEWOOD, N.J., a nonprofit corporation of the State of New Jersey, fee owner; NORTHERN NEW JERSEY COUNCIL, BOY SCOUTS OF AMERICA, INC., a nonprofit corporation of the State of New Jersey; THE STATE OF NEW JERSEY, by the COMMISSIONS of the DEPARTMENT OF ENVIRORNMENTAL PROTECTION, fee owner, and as holder of a Green Acres restriction on County of Bergen-owned properties; THE STATE OF NEW JERSEY by the SECRETARY OF THE DEPARTMENT OF AGRICULTRE (State Agriculture Committee); THE COUNTY OF BERGEN, a political subdivision of the State of New Jersey, see owner and as** | Civ. No. 2:12-cv-7921 (WJM)<br><br><br>**OPINION** |

**holder, by the BERGEN COUNTY AGRICULTURE DEVELOPMENT BOARD, of an interest in the Greene Property,**

                      **Defendants,**

**and**

**THE Yaw Paw CAMP FOUNDATION OF RIDGEWOOD-GLEN ROCK, INC., a nonprofit corporation of the State of New Jersey,**

                      **Third-Party Plaintiff,**

                      **v.**

**RANDY RAMUNDO AND LORI RAMUNDO, fee owners**

                    **Third-Party Defendants.**

**and**

**THE COUNTY OF BERGEN, a political subdivision of the State of New Jersey,**

                    **Third-Party Plaintiff,**

                      **v.**

**RANDY RAMUNDO AND LORI RAMUNDO, fee owners; SPECTRA ENERGY PARTNERS, L.P.; and ALGONQUIN GAS TRANSMISSION COMPANY,**

                    **Third-Party Defendants.**

**and**

MICHAEL BRIZZOLARA AND DAWN
BRIZZOLARA, his wife,

      **Third-Party Plaintiffs,**

      **v.**

SPECTRA ENERGY PARTNERS, L.P.;
and ALGONQUIN GAS TRANSMISSION
COMPANY,

      **Third-Party Defendants.**

<u>**WILLIAM J. MARTINI, U.S.D.J.:**</u>

      This matter comes before the Court on multiple motions. First is a motion for summary judgment from Plaintiff Tennessee Gas Company, L.L.C ("Tennessee Gas"). In its motion, Tennessee Gas argues that it has the right to travel Bear Swamp Road, a three-mile stretch of improved macadam located in Mahwah, New Jersey. Specifically, Tennessee Gas contends that Bear Swamp Road is a "quasi-public" by-road that is open to public use. A number of other parties to this action have filed cross-motions for summary judgment that similarly argue for by-road status. In addition to opposing the aforementioned motions, Defendants Michael and Dawn Brizzolara have filed a cross-motion seeking to vacate a preliminary injunction this Court entered in January of 2013.

      For the reasons set forth below, Tennessee Gas' motion, along with the cross-motions of the other parties who argue that Bear Swamp Road is a by-road, are **GRANTED**. Because this result obviates the need for the preliminary injunction this Court ordered in January of 2013, the Brizzolaras' cross-motion is also **GRANTED**.

**I.    BACKGROUND**

      At bottom, this case is about who has the right to use Bear Swamp Road, a three-mile stretch of improved macadam that connects with U.S. Route 202 (also known as Ramapo Valley Road) at its most southeastern point. This background section will first describe the nature of the action and the various motions before the Court. It will then provide a rundown of the parties and their relationship to Bear Swamp Road. Finally, it will provide a more detailed description of the Road itself. Unless otherwise noted, the following facts are undisputed.

**A. The Instant Action and Motions for Summary Judgment**

In May 2012, Tennessee Gas received a Certificate of Public Convenience and Necessity (hereinafter, "the Certificate") from the Federal Energy Regulation Commission ("FERC") authorizing it to construct its Northeast Upgrade Project (hereinafter, "the Project"). The Project – which Tennessee Gas expected to complete by November 1, 2013 – requires the use of Bear Swamp Road. The Road crosses through properties owned by the following parties: Carol Greene, Richard Greene, and Lindsey Greene Barrett ("the Greenes"); Michael and Dawn Brizzolara ("the Brizzolaras"); Randy and Lori Ramundo ("the Ramundos"); The Yaw-Paw Camp Foundation of Ridgewood-Glen Rock ("Yaw Paw"); the County of Bergen ("Bergen" or "the County"); and the State of New Jersey by the Commissions of the Department of Environmental Protection and by the Secretary of the Department of Agriculture ("the State").

Shortly after receiving the Certificate from the FERC, Tennessee Gas filed this action in federal court. Tennessee Gas' Complaint consists of two counts. First, pursuant to Section 717f(h) of the Natural Gas Act, Tennessee Gas seeks to establish its temporary access rights to use the Road for the purposes of carrying out the Project. Second, Tennessee Gas seeks a declaratory judgment that it possesses permanent rights to use the Road.[1] *See* ECF No. 78.

Along with filing its Complaint, Tennessee Gas moved for a preliminary injunction that would allow it to take immediate possession of temporary access easements along Bear Swamp Road. On January 22, 2013, this Court issued an order granting Tennessee Gas' motion, thus acknowledging Tennessee Gas' eminent domain power under the Natural Gas Act. ECF Nos. 40, 41. While Tennessee Gas notes that it has successfully placed the Project in-service, it stresses that it still must complete "construction activities and restoration work associated with the Project." (Tennessee Gas Reply Brief at 35).

Tennessee Gas has filed the instant motion for summary judgment arguing that it has the permanent right to travel Board Swamp Road. In support of its motion, Tennessee Gas contends that Bear Swamp Road is a "quasi-public by-road" open to public use. In the alternative, Tennessee Gas argues that it possesses common law rights to use the Road. Yaw Paw, along with another gas company, Algonquin Gas Transmission ("Algonquin"), have filed cross-motions for summary judgment that assert their rights to use the Road. In support of their motions, Yaw Paw and Algonquin rely on similar arguments made by Tennessee Gas. Bergen County has also filed a cross-motion for summary judgment arguing that the Road is a by-road, but it disputes any party's claim to prescriptive easement rights.

---

[1] In other words, Tennessee Gas seeks to establish that it has continuing rights to use the Road after the Project is complete.

In opposition, the Brizzolaras, Greenes, Ramundos, and the State of New Jersey contend that Bear Swamp Road is not a by-road; instead, they argue, it is a private road not subject to public use. The Greenes and Brizzolaras further contend that none of the moving parties possess a prescriptive easement over the Road.[2] The Brizzolaras, have also filed a cross-motion asking the Court to vacate its January 22, 2013 injunction order on the grounds that Tennessee Gas has completed the Project and therefore no longer requires its temporary access easements.

## B. The Parties and Their Use of Bear Swamp Road

### 1. Tennessee Gas

Tennessee Gas is a natural gas company within the meaning of the Natural Gas Act, 15 U.S.C. § 717 *et seq*., operating under the authority of the FERC. The company owns and operates a natural gas transmission system that spans a vast geographic region. (Tennessee Gas Statement of Material Facts at ¶1).

In the mid-1950's Tennessee Gas installed its "300 Line," which intersects with Bear Swamp Road at the Road's northern most point. (Tennessee Gas Statement of Material Facts at ¶3). In 1955, Tennessee Gas obtained an easement that allowed it to access the north point of Bear Swamp Road, including the portion of the Road that intersects with the 300 Line. (Tennessee Gas Statement of Material Facts at ¶26). However, Tennessee Gas does not possess recorded rights to utilize Bear Swamp Road in its entirety. (Tennessee Gas MSJ at ¶5). Specifically, Tennessee Gas does not possess recorded rights to use the southeastern portion of the road that eventually intersects with Route 202. (*Id*.)

As the 300 Line runs south from its intersection with Bear Swamp Road, it meets two pipelines that Algonquin installed between 1955 and 1963. (Tennessee Gas Mt. for Summary Judgment, Ex. B; Tennessee Gas Statement of Material Facts at ¶¶ 27, 42, 43). The Mahwah Meter Station is located on a parcel owned by Algonquin and sits where Algonquin and Tennessee's pipelines intersect. Tennessee Gas uses the Meter Station "to perform federally mandated maintenance and operation procedures, as well as to conduct federal mandated safety inspections…" (Tennessee Gas Statement of Material Facts at 3, 28).

Tennessee Gas personnel travel the entirety of Bear Swamp Road to perform readings at the Meter Station on a periodic basis, typically four times a month. (Tennessee

---

[2] The State takes no position as to whether any party has prescriptive easement rights. The Ramundos admit that Tennessee Gas has prescriptive easement rights over their property, but deny that any of the other moving parties possess such rights.

Gas Statement of Material Facts at ¶ 30). In addition to those periodic visits, Tennessee Gas personnel travel Bear Swamp Road to perform other procedures as the need arises. (Tennessee Gas Statement of Material Facts at ¶¶ 31-35). Tennessee Gas has used Bear Swamp Road for this purpose without interruption since the 1950s. (Tennessee Gas Statement of Material Facts at ¶ 34). Tennessee Gas has also assisted with road maintenance by providing resources for, among other things, snow removal and bridge repair. (Tennessee Gas Statement of Material Facts at 36). A Tennessee Gas employee has declared that in his thirty-three years of traveling Bear Swamp, he has never been required to ask permission to use the Road. (L. Michalak Decl. at ¶ 12).

2. <u>Algonquin</u>

Third-Party Defendant Algonquin is a Delaware company with its principal office located in Houston, Texas. (Algonquin Statement of Material Facts at ¶ 1). Algonquin is wholly owned by Spectra Energy Partners, LP, who is also named as a Third-Party Defendant in this case. (Algonquin Statement of Material Facts at ¶ 1). Like Tennessee Gas, Algonquin is a natural gas company as that term is defined by the Natural Gas Act. (Algonquin Statement of Material Facts at ¶ 2). Algonquin owns the Meter Station and the parcel of land where the Meter Station is located. (Algonquin Statement of Material Facts at ¶¶ 5-6).

Algonquin has obtained easements to use the northern portion of Bear Swamp Road, or what Algonquin refers to as "Upper Bear Swamp Road."[3] (Algonquin Statement of Material Facts at ¶ 39). Like Tennessee Gas, Algonquin does not possess any recorded rights over the entirety of "Lower Bear Swamp Road," the portion of the road that crosses properties owned by the County of Bergen, the Ramundos, the Brizzolaras, and the Greenes.

Algonquin also relies on Bear Swamp Road to reach the Mawah Meter Station and inspect its pipeline facilities. (Algonquin Statement of Material Facts at ¶ 44). Algonquin inspects its pipeline on a routine basis at intervals not to exceed three weeks, but at least twenty-six times each year. (Algonquin Statement of Material Facts at ¶ 49). Moreover, Algonquin makes monthly inspections at the Meter Station to ensure compliance with Pipeline Safety Act regulations. (Algonquin Statement of Material Facts at ¶ 53). Similar to Tennessee Gas, Algonquin has contributed to repairs made to the Road. Algonquin has coordinated such maintenance with other entities that rely on the Road, including the Boy Scout Camp and the County of Bergen. (Algonquin Statement of Material Facts at ¶ 54).

---

[3] The Brizzolaras and Greenes contend that "Upper Bear Swamp Road" is actually "Cannonball Road." In support of this position, the Brizzolaras have directed the Court to a tax map from 1985. (Smith Decl., Ex. A). The map is unclear, however, because it also refers to parts of the northern portion of the Road as "Bear Swamp Pond Road," rather than Cannonball Road. (*Id.*) Richard Greene has also testified that different maps have conflicting information. (R. Greene Dep. at 26:23-27:1).

3. <u>Yaw Paw and the Boy Scouts</u>[4]

Bear Swamp Road also runs through a parcel of property owned by Defendant Yaw Paw. (Yaw Paw Statement of Material Facts at ¶ 1). Yaw Paw leases the property to Defendant Northern New Jersey Council, Boy Scouts of America ("the Boy Scouts"), for the operation and maintenance of a Boy Scout Camp. (Yaw Paw Statement of Material Facts at ¶ 2). Bear Swamp Road has provided Yaw Paw with the primary means of access its property. (Yaw Paw Statement of Material Facts at ¶ 3). Yaw Paw claims that it has never been prohibited from using Bear Swamp Road to access its property. (Yaw Paw Statement of Material Facts at ¶ 3). In fact, within the last three years, Richard Greene has provided the Boy Scouts with a written agreement allowing the Scouts to use the portion of Bear Swamp Road that traverses his property. (R. Greene Dep. at 177:5-10).

Yaw Paw has leased its land to the Boy Scouts since the 1920s. (Yaw Paw Statement of Material Facts at ¶ 11). Ever since then, both Yaw Paw and the Boy Scouts have utilized Bear Swamp Road to access the campsite. (Yaw Paw Statement of Material Facts at ¶ 12). The campsite's caretaker uses Bear Swamp Road on a daily basis to access the property. (Yaw Paw Statement of Material Facts at ¶ 12). The Boy Scouts use the Road to access the campsite on weekends, and during the summer they use the Road on a daily basis in order to transport campers and staff to six-week summer camp programs. (Yaw Paw Statement of Material Facts at ¶ 12). Richard Greene has testified that he has witnessed "countless" boy scouts, parents, and service personnel use Bear Swamp Road to reach the scout camp. (R. Greene Dep. 148:18-22). The Boy Scouts have contributed to the maintenance of the Road in order to keep the camp accessible to those who wish to reach it. (Yaw Paw Statement of Material Facts at 13).

4. <u>The Greenes</u>

Carol Greene, Richard Greene, and Lindsey Greene Barrett are Defendants in this action and fee owners of Block 1, Lot 47, which begins soon after Bear Swamp Road intersects with Route 202. (Tennessee Gas Mt. for Summary Judgment, Ex. B). The previous owner of the lot was Carol Greene's father, Fred Wehran, who operated the property as part of Sun Valley Farm. Richard Greene went hiking on the property in the 1950s and did masonry work for Sun Valley Farm in the late 1960s. (R. Greene Dep. at 13:2-19). While working at Sun Valley Farm, Richard Greene met Carol, and the two later married. Starting in the late 1980s, Richard Greene oversaw the operation of the farm. (R. Greene Dep. at 19:23-20:2). Currently, Richard Greene, Carol Greene, and Lindsey

---

[4] The Boy Scouts have joined Yaw Paw in its cross-motion for summary judgment. ECF No. 141.

Greene Barrett are the fee owners of the property. (Tennessee Gas Second Amended Complaint at ¶19). While Bear Swamp Road runs through the Greene's property, the Greenes do not rely on the Road for reaching Route 202. Instead, the Greenes utilize an alternate route to reach their property. (R. Greene Dep. at. 15:17-14:5).

### 5. The Brizzolaras

Bear Swamp Road crosses through a parcel of land owned by Defendants Michael and Dawn Brizzolara. The Brizzolaras acquired their property in 2011. The Brizzolaras do not rely on Bear Swamp Road to reach their property. (Brizzolara Decl. at ¶ 1). In a "Survey Endorsement" to the property's title policy, the Brizzolaras took title subject to "rights of others in and to Bear Swamp Road which varies along and over the northerly line onto subject premises." (Algonquin Reply, Ash Decl., Ex. A).

### 6. The Ramundos

Bear Swamp Road runs through a parcel of property owned by Lori and Randy Ramundo. The Ramundos acquired their property in 1994. The Ramundos do not rely on Bear Swamp Road to reach their property. (Ramundo Decl. at ¶¶ 9-13). The title insurance policy on their property identifies as an exception to coverage "the rights of the public, and private rights, in and to so much of the premises described…as lies within the bed of Bear Swamp Road." (Algonquin Reply, Ash Decl. Ex. B).

### 7. County of Bergen

Defendant County of Bergen also owns property intersected by Bear Swamp Road. The County uses this property as a public parkland. (Algonquin Statement of Material Facts at ¶ 20). Additionally, the County possesses non-agricultural development rights to a portion of the Greene property that is relevant to this action. (Complt. at ¶20).

Bear Swamp Road provides a means for the County to access its property. (Algonquin Statement of Material Facts at 22). Specifically, the County and its departments use the Road to access public parkland. (Tennessee Gas Statement of Material Facts at ¶¶ 15-18). The County states that it has continuously utilized Bear Swamp Road to reach its property since the 1970s. (County Third Party Complt., ¶¶ 2-3). In contrast, Richard Greene has testified that he recalls the County using the Road "maybe once a year." (R. Greene Dep. 70:21-25).

### 8. The State of New Jersey

The State of New Jersey, by the Commissioner of the Department of Environmental Protection ("NJDEP") and by the Secretary of the Department of Agriculture (State Agriculture Development Committee)("SADC") is also named as a Defendant in this case.

The Commissioner of NJDEP holds a restriction on certain property that is intersected by Bear Swamp Road and owned by Defendant County of Bergen. (Complaint at ¶ 24). Additionally, Bear Swamp Road intersects through parkland owned and maintained by NJDEP. NJDEP states that the parkland is open for recreational use by the public. NJDEP also states that it relies on Bear Swamp Road for access to its property. (Algonquin Statement of Material Facts at ¶ 22); (Algonquin Statement of Material Facts at 23, NJDEP Responses to Interrogatory #24).

### C. Bear Swamp Road

#### 1. The Road's Creation

Bear Swamp Road has been in existence since the late nineteenth century, if not before. (Tennessee Gas Statement of Material Facts at ¶ 7). The Road appears on an 1882 survey that was subsequently revised in 1903. (Tennessee Gas Statement of Material Facts at ¶ 7). The Parties agree that in its infancy, the Road was developed and used as a logging road that allowed individuals to haul timber down from Ramapo Mountain to Ramapo Valley Road. (Algonquin Statement of Material Facts at ¶ 17; Tennessee Gas Statement of Material Facts, Ex. H; Greene Deposition at 108:24 and 110:4).

There are a few early documents that describe the Road; however, Tennessee Gas' expert concedes that a majority of these documents do not state whether the Road is public or private. (Heenehan Decl. at ¶ 8). A 1939 Works Progress Administration (WPA) summary describes Bear Swamp Road as a "public road leading from the Ramapo Valley Road to Wynockie." (Tennessee Gas Statement of Material Facts at Ex. F.) The same document, however, states that "[a]ccording to Planning Board these roads are now private roads --- not public, as indicated by above return." (*Id*.) A 1974 appraisal report describes what appears to be Bear Swamp Road as a "private road." A similar document describes the Road as a "private road…only open to the residents and state officers." (Tennessee Gas Statement of Material Facts, EX I, DEP 00146; DEP00291).

#### 2. The Road's Use Throughout the 20th Century

Aside from the parties to this action, other individuals have used Bear Swamp Road in the past. In particular, individuals who lived in a cluster of cabins along Bear Swamp Lake used the Road to access their properties in the 1960s and 1970s. (Tennessee Gas Statement of Material Facts at ¶ 53); (*See, e.g.*, Dator Decl. at ¶ 8).[5] Additionally, appraisal documents indicate that Bear Swamp Road was the best route of access for those cottages.

---

[5] Tennessee Gas states that the Bear Lake Realty Association established and maintained those cabins starting in the 1920s, while Richard Greene has testified that he first noticed the cabins while hiking in the 1950s. (Tennessee Gas Statement of Material Facts at ¶ 53; R. Greene Dep. at 163:13-20).

(*See, e.g.,* Tennessee Gas Statement of Material Facts, Ex. I, DEP000291). Richard Greene has testified that at least some of the cottage owners "probably" used Bear Swamp Road to access their properties. (R. Greene Dep. at 164:11-13).

Members of the general public continue to use Bear Swamp Road for recreational purposes such as hiking. (Michalak Decl. at ¶ 14; Winters Decl. at ¶ 11; Boy Scout's Answer to Interrogatory #19; Yaw Paw's Answer to Interrogatory #21; R. Greene Decl. at 108:13-17). A Tennessee Gas employee has certified that in order to use the Road for those purposes, individuals must park their vehicles in front of the Greene property and continue on the Road by foot. (Winters Decl. at ¶ 11). Richard Greene does not deny that members of the public use Bear Swamp Road for recreational purposes and has admitted to seeing hikers on the Road. (R. Greene Dep. at 169:3-18; 108:13-17). However, he contends that those individuals are trespassers, and notes that there has been a "constant problem with trespassers." (R. Greene Dep. at 56:21-22).

3. <u>The Presence of a Gate on the Greene Property</u>

In the 1920s, the Boy Scouts of America installed a gate at the bottom portion of Bear Swamp Road that is currently located on property owned by Carol and Richard Greene. (Algonquin Statement of Material Facts at ¶ 57). The gate was erected for the benefit of all property owners. (Algonquin Statement of Material Facts at ¶ 56). Carol Greene recalls that there was always a gate blocking access to the Road. (C. Greene Dep. at 23-24). In contrast, other witnesses remember there being certain periods in the 1960s in which there was no gate and that access to the Road was unimpeded. (See A. Kidd Decl. at ¶¶ 6, 8; R. Kidd Decl. at ¶¶ 6-8). A former resident of a cottage on Bear Swamp Lake has certified that when he lived near the Road in the 1970s, the Boy Scouts were primarily responsible for the gate. Additionally, the witness recalls the Boy Scouts, the gas companies, and other owners of property along the road, having their own locks on the gate. (Dator Decl. at ¶9). In the 1980's, the County installed the current gate. (Tennessee Gas Statement of Material Facts at ¶ 60). A former County employee states that the County erected the gate in order to limit "the destructive all-terrain vehicles and other vehicles which were becoming a nuisance on County-owned property." (Rimmer Decl. at ¶8). Carol Greene has testified that the purpose of the gate is to "control the use of the road and limit the use of the road to people who have the right to use it." (C. Greene Dep. at 21:6-10).

Algonquin, Tennessee Gas, the NJDEP, and Yaw Paw have keys to the locks on the gate. (Algonquin Statement of Material Facts at ¶ 58; Yaw Paw Statement of Material Facts at ¶ 18; Tennessee Gas Statement of Material Facts at ¶ 61). However, Richard Greene has testified that the gate has often been left open. (R. Greene Dep. at 125:20-25). While the gate is on the Greene's property, the Greenes do not possess a key to the gate and are not responsible for providing keys to others. (Tennessee Gas Statement of Material Facts at ¶ 62; R. Greene Dep. 33:21-25). Parties who have accessed the gate have not been

required to provide notice to any property owner. (Algonquin Statement of Material Facts at ¶ 58). Moreover, the Greenes do not control who has access to the gate and have never filed a formal complaint against anyone for accessing the gate. (Tennessee Gas Statement of Material Facts at ¶ 62). When the Greenes have put their own locks on the gate, those locks have been removed with bolt cutters. (R. Greene Dep. 56:21-57:5; 59:15-18).

Richard Greene has testified that since 2011 or 2012, there have been signs posted along his property indicating where the public right-of-way ends. According to Mr. Greene, those signs were authorized by either Tennessee Gas or its subcontractor, and signs replaced similar signs that were posted by an entity called ENGlobal. (R. Greene Dep. at 141:7-144:15). Mr. Greene has further testified that similar postings had existed since the 1940s, but they later became faded and illegible due to wear. (R. Greene Dep. at 142:1-8); (R. Greene Dep. at 144:19-145:12). In addition to testimony from Mr. Greene, Mrs. Greene has testified that there are signs along the Road indicating that the area is private property. (C. Greene Dep. at 56:9-19). She has also testified that the private property signs are not placed on the gate or the road itself; instead, they are placed on trees in the woods. (C. Greene Dep. at 57:4-57:25).

## II.   DISCUSSION

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp*., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).[6]

---

[6] The Ramundos and the Greenes failed to respond to any of the statements of material facts filed with the instant summary judgment motions, even though they were required to do so under Local Rules. *See* N.J. L. Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement…"). The Greenes are proceeding *pro se*, however counsel to the Ramundos has provided no explanation for declining to provide a response. Moreover, a party's *pro se* status does not absolve him of the requirements under Local Rule 56.1(a). *See, e.g.*, Glazewski v. Corzine, No. 06-4107, 2009 WL 5220168, *1 (D.N.J. Dec. 31, 2009). Thus, to the extent that the assertions in the statements of material facts are properly supported, the Court will deem them unopposed by the Greenes and the Ramundos. *See, e.g., Malik v. Hannah*, 799 F. Supp. 3d 355, 356 (D.N.J. 2011). That said, the Court will consider the responses filed by the Brizzolaras and the State.

The instant motions for summary judgment hinge on two main issues: (1) whether Bear Swamp Road a quasi-public by-road; and (2) if Bear Swamp Road is not a by-road, whether certain parties possess common law easement rights to use the Road as they please. After reviewing the record, the Court concludes that as a matter of law, Bear Swamp Road is a by-road. Summary judgment will therefore be entered in favor of Tennessee Gas, Algonquin, Yaw Paw, and Bergen County. Because the Court's ruling will obviate the need for the preliminary injunction that granted Tennessee Gas possession of temporary easement rights along the Road, the Court will also grant the Brizzolaras' cross-motion to vacate the injunction.

## A.  Law Governing By-Roads

The State of New Jersey has recognized three categories of roads: (1) public roads; (2) private roads; and (3) by-roads.  *Barile v. City of Port Republic*, 186 N.J. Super. 587, 597 (Law Div. 1982).  A public road is only established where there is dedication for public use by the landowner and either acceptance of the dedication by the public entity or use by the general public for 20 years.  *Highway Holding Co. v. Yara Engineering Corp.*, 22 N.J. 119, 128 (1956); *see also Kiernan v. Primavera*, 109 N.J. Super. 231, 236 (Ch. Div. 1970).  Generally, a municipality or other proper government unit is responsible for maintaining public roads.  *See Lower Tp. v. Reeves et al.*, 14 N.J. Super. 180, 182-84 (Ch. Div. 1951).  [7]  A private road is laid out at the request of an individual landowner for his or her own personal use.  *Wood v. Hurd*, 34 N.J.L. 87, 89 (Sup. Ct. 1869).

The third category is a by-road.  A by-road does not derive from statutory provision; rather it "is an obscure or neighborhood road in its earlier existence, not used to any great extent by the public, yet so far a public road that the public have, of right, free access to it at all times."  *Wood v. Hurd*, 34 N.J.L. 87, 89 (1869)  New Jersey courts have described the origins of by-roads as follows:

> They are roads of necessity in newly-settled countries.  Individuals locate some distance from a public road.  They make a by-road to the nearest public road.  In process of time other individuals located between them and the highway and the land is cleared, but the road is continued…and they continue to use their road for thirty or forty years.

*Van Blarcom v. Frike*, 29 N.J.L. 516, 518 (1861).  A road will constitute a by-road only if it meets certain requirements.  Specifically, the road "must have been given up or dedicated by its owner for the purposes of a by-road to all who may wish to enjoy it."  *Wood*, 34

---

[7] Some New Jersey courts have recognized a "public highway" as a subset of a public road.  Under this view, the government is required to maintain only public highways, not all public roads.  *See Barile*, 186 N.J. Super. at 594.

N.J.L. at 89.  Generally, dedication can be established through express declaration or act; alternatively, it can be established through uninterrupted use by the public for a period of twenty years.  *Id*. at 90.

### B.  Are By-Roads Still Recognized Under New Jersey Law?

There is a threshold issue of whether New Jersey currently recognizes the legal status of by-roads.  Older decisions from New Jersey courts, including the Supreme Court of New Jersey, have undoubtedly recognized the by-road as a legitimate legal classification. *Tarlucki v. West Jersey & S. S. R. Co.*, 86 N.J.L. 301, 302 (1914); *Yeomans v. Twp. Comm. Of Ridgewood*, 46 N.J.L. 508 (1884); *Wood*, 34 N.J.L. at 89; *Frike*, 29 N.J.L at 518; *Stevens v. Allen*, 29 N.J.L. 68 (1860).

Notwithstanding the above, the Greenes, Brizzolaras, Ramundos, and the State argue that by-roads are relics from the past and are no longer recognized under New Jersey law.  In support of this theory, those parties quote the following from the Superior Court decision *Barile v. City of Port Republic*, 186 N.J. Super 587, 598 (Law Div. 1982):  "The by-road seems to have disappeared from our cases over the past one hundred years, thus leaving the status of such roads in limbo."  Under *Barile*, the argument goes, Bear Swamp Road cannot be a by-road because by-roads are no long recognized in New Jersey.

The Court disagrees.  As a threshold matter, *Barile* was decided by a state trial court, which means that its holding on a matter of state law is not binding here.  Indeed, there is no holding from the Supreme Court of New Jersey – or even any New Jersey intermediate appellate court – that has cast doubt on the legal status of by-roads.  *See Nationwide Mutual Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) ("a federal court can also give due regard, but not conclusive effect, to the decisional law of lower state courts.")  *Barile* gives no rationale for this offhand remark,[8] other than the fact that discussion of by-roads has seemed to disappear from the case law over the past century.  The mere absence of recent decisions discussing by-roads is not a sufficient reason for rejecting a legal concept that has been previously recognized by New Jersey's highest court.

Moreover, *Barile* did not definitively conclude that by-roads no longer exist; rather, it merely suggested that the status of such roads is "in limbo."  And even if *Barile* could be read to meaningfully suggest that New Jersey has eschewed the by-road as a legal concept, one current New Jersey statute concerning the acquisition of roads implicitly recognizes the legitimacy of by-roads:  "The board of chosen freeholders may acquire by purchase, gift or condemnation, any public road, toll road, private road *or byroad*, or any portion thereof…."  N.J.S.A. 27:16-2 (emphasis added).  Finally, the Supreme Court of New Jersey

---

[8] The *Barile* Court did not find it necessary to determine whether the roads at issue were by-roads; therefore, any suggestion in that case regarding New Jersey's recognition of by-roads is mere dicta. *See Barile*, 186 N.J. Super at 597.

also has implicitly recognized a category of roads that cannot be classified as purely public or private. *See State v. Widaimer*, 157 N.J. 475, 487 (1999) (interpreting N.J.S.A. 39-4-50.2 to provide that any individual who operates a vehicle on a "public or quasi-public road" consents to a breathalyzer test). Taking these factors together, the Court concludes that by-roads are recognized under New Jersey law.

## C.  Is Bear Swamp Road a By-Road?

Having found that by-roads are still legally recognized in New Jersey, the Court must move on to the next step of its analysis:  are Tennessee Gas and the other parties who support its position entitled to judgment as a matter of law that Bear Swamp Road is a by-road?  After scrutinizing the record, the Court answers in the affirmative.

As stated previously, a road can be a by-road only if it has been dedicated to the public. *Hurd*, 34 N.J.L. at 90.  Public dedication can occur by two methods:  (1) express dedication or act; or (2) uninterrupted use by the public for a period of twenty years.  *Hurd*, 34 N.J.L. at 89.  Generally, ambiguous questions of dedication are resolved in favor of the public. *See, Haven Homes, Inc. v. Raritan Tp.*, 19 N.J. 239, 246 (1955).  Here, the parties who advocate for by-road status argue that dedication has occurred because the public has enjoyed uninterrupted use of the Road for twenty years.  *Id*.  Where dedication is premised on public use for a twenty-year period, "[i]t must be a use by the public of the neighborhood, not a use confined to one or two individuals."  *Campbell Stores v. Mayor and Council of City of Hoboken*, 115 N.J. Eq. 159, 163 (1934) (dedication occurred where passengers of two common carriers were free to traverse walkway) (quoting *Wood*, 34 N.J.L. at 87).  Once the public has used a road for twenty years, a presumption of dedication will arise.  That presumption will only be defeated where a landowner takes action indicating that he or she has not acquiesced to public use.  *Hurd*, 34 N.J.L. at 89.

### i.  Has the Road Been Open to Public Use for a Period of Twenty Years?

The Court finds that no reasonable trier of fact could conclude that Bear Swamp Road has not been open to public use for a period of twenty years.  Moreover, the evidence unequivocally shows that such use was not "confined to one or two individuals."  *Campbell Stores*, 115 N.J. Eq. at 159.  First, there is no dispute that both Tennessee Gas and Algonquin have been using the Road to access their pipeline facilities for over five decades. (Tennessee Gas Statement of Material Facts at ¶ 34); (Algonquin Statement of Material Facts at ¶ 39).  This use has been extensive:  Tennessee Gas personnel travel the Road at least four times a month, whereas Algonquin personnel have travelled the Road at least twenty-six times a year.  (Algonquin Statement of Material Facts at ¶ 39); (Tennessee Gas Statement of Material Facts at ¶ 30).

It is also undisputed that the Boy Scouts have used the Road to access their camp since the 1920s.  (Yaw Paw Statement of Material Facts at ¶ 12).  The Boy Scouts' use has also

been extensive, especially considering that during the summer the Scouts use the Road on a daily basis to transport campers and staff to six-week summer programs. (Yaw Paw Statement of Material Facts at ¶ 12). Richard Greene has testified that he has witnessed "countless" Scouts use the Road to access the camp, and photos taken at the Road's entrance show large buses full of children crossing the gate located on the Greene's property. (R. Greene Dep. at 148:18-22); (Tennessee Gas Statement of Material Facts, Ex. E).

The Ramundos contend that the Boy Scouts have always had permission from the Greenes to travel the Road, and therefore their use of the Road cannot form a basis for public dedication. First, the presumption of dedication in this case is not solely premised on use by the Boy Scouts; numerous entities and the general public have also used the Road for decades. Second, "permissive use" will not occur where a landowner merely acquiesces to the use of a Road without giving permission. *See, Plaza v. Flak*, 7 N.J. 215, 223 (1951). The evidence shows that for the bulk of the relevant period, the Greenes and Wehrans acquiesced to the Boy Scouts' use of the Road without granting them permission. (R. Greene Dep. at 72:1-8). In fact, Mr. Greene did not provide the Boy Scouts with permission to use the Road until Tennessee Gas instituted this action. (R. Greene Dep. at 177:2-11).

Additionally, the evidence unequivocally shows that individuals who resided in cottages along Bear Swamp Road in the 1960s and 1970s used the Road to access their properties. (*See, e.g.,* Dator Decl. at ¶ 8). The evidence that supports this undisputed fact includes declarations submitted by individuals who lived in the cottages; appraisal documents listing Bear Swamp Road as the primary means of access for the cottages; and testimony from Richard Greene conceding that at least some of the cottage owners likely used the Road. (*See, e.g.,* Tennessee Gas Statement of Material Facts, Ex. I, DEP000291; R. Greene Dep. at 164:11-13). It is also undisputed that the County has used the Road to access its property since the 1970s. (County Third Party Complt., ¶¶ 2-3). Similarly, no one disputes the fact that the NJDEP also relies on Bear Swamp Road to access its property. (Algonquin Statement of Material Facts at 22); (Algonquin Statement of Material Facts at ¶ 23, NJDEP Responses to Interrogatory #24).

Moreover, the evidence indisputably shows that other members of the general public have used the Road for recreational purposes. For example, a declaration from a Tennessee Gas employee who has travelled Bear Swamp Road for thirty-three years states the following: "I have observed the general public utilizing Bear Swamp Road for recreational purposes such as hiking, biking, fishing and horseback riding." (Michalak Decl. at ¶ 14). The Boy Scouts have similarly "observed individuals using Bear Swamp Road by foot or bicycle for recreational purposes" and Yaw Paw "has observed the public use the Road for hiking and dog walking." (Boy Scout's Answer to Interrogatory #19; Yaw Paw's Answer to Interrogatory #21). Even Mr. Greene does not deny that the public has used the Road for recreational purposes. (R. Greene Dep. at 169:3-18; 108:13-17).

### ii.    Has the Presumption of Dedicated Been Rebutted?

Because the public has used the Road for a period of twenty years, there is a presumption of dedication.  After reviewing the record, the Court concludes that no reasonable trier of fact could find that this presumption has been rebutted.

The parties opposing by-road status primarily contend that any presumption of public use has been rebutted by the existence of a gate located on the Greene's property. In this case, the Boy Scouts installed a gate in the 1920s, and the County installed the current gate in the 1980s.[9]  The parties dispute whether a gate was consistently present during the years in between.  Mrs. Greene recalls there always being a gate, whereas other inhabitants along the Road have stated that there was no gate present during the 1960s. (*Compare* A. Kidd Decl. at ¶¶ 6, 8; R. Kidd Decl. at ¶¶ 6-8 *with* C. Greene Dep. at 20:23-24).

Even assuming that a gate was always present, the Court finds that the presumption of dedication has not been rebutted.  The presence of a gate at the entrance of a road will not defeat by-road status where the gate does not prevent the public from using the Road. In *Van Blarcom v. Frike*, 29 N.J.L. 516, 519 (1861), New Jersey's highest court held that the placement of sliding bars at the entrance of a by-road did not defeat the presumption of dedication because "the bars did not prevent the inhabitants from the use of the road…." The court further noted that "[a] nuisance erected and maintained for any number of years in a public, private, or by-road, would not change the character of the road, if the travel on the road is uninterrupted."  *Id.  See also, Lower Tp. v. Reeves, et al.*, 14 N.J. Super. 180, 186 (1951).    The evidence undisputedly shows that parties with property interests along Bear Swamp Road, as well as members of the public, routinely travelled the Road between the 1920s and 1980s,[10] and have continued to use the Road to the present day.  Use of the Road has included, but is not limited to:

- The gas companies traveling the Road to reach their facilities;
- The County using the Road to reach its property;

---

[9] The parties do not dispute that the Boy Scouts and the County are responsible for installing those gates. (Tennessee Gas Statement of Material Facts at ¶¶ 57-60).   This is notable because neither the County nor the Boy Scouts argue against by-road status.

[10] Additionally, the gate that existed prior to the one constructed by the Boy Scouts did not prevent ATVs and other vehicles from using the Road.  (Rimmer Decl. at ¶ 11).  Therefore, even if the construction of the new gate in the 1980s could be interpreted as an attempt to make the Road private, the attempt would be unsuccessful, because dedication becomes irrevocable once it attaches.  *See Dodge & Bliss Co. v. Mayor and Aldermen of Jersey City*, 105 N.J. Eq. 545, 554 (1930).  In other words, the evidence shows that public dedication was established well before the Boy Scouts constructed a new gate in the 1980s.

- Individuals traveling on the Road to reach their cottages;
- The Boy Scouts using the Road to operate its camp; and
- Hikers, hunters, and fisherman using the Road for recreational purposes

*See* Section II.C.i, *supra*.  Relatedly, the construction of a gate will defeat by-road status only where it is "an act of dominion over the land under claim of title."  *Lower Tp. v. Reeves, et al.*, 14 N.J. Super. at 186-87 (citing *Wood v. Hurd*, 34 N.J.L. 87, 89 (1869)).  Here, the Boy Scouts and the County – not the Greenes or their predecessors – were primarily responsible for installing gates on Sun Valley Farm.  (Tennessee Gas Statement of Material Facts at ¶¶ 57-60).  Moreover, Mr. Greene has conceded that the gate has often been left open, that at times he has not possessed keys to the gate, and that when he has placed locks on the gate, the locks have been removed.  (Tennessee Gas Statement of Material Facts at ¶ 62; R. Greene Dep. 33:21-25; 56:21-57:5; 59:15-18).  Given these facts, it is evident that the presence of a gate has not evinced an owner's intent "to retain absolute control over his estate."  *Hurd*, 34 N.J.L. at 93.  Therefore, the presence of a gate does not rebut the presumption of dedication.

Other arguments made in opposition to by-road status are similarly unavailing.  The Brizzolaras and Ramundos argue that the Road cannot be a by-road because the Greenes and their predecessors have posted "Private Property" signs on Sun Valley Farm.  None of the parties opposing by-road status have submitted any photos indicating what the signs say or where they are posted; instead, they rely on testimony from Mr. Greene that is largely premised on hazy or incomplete recollections.[11]  Even reading this vague evidence in a light most favorable to the non-movants, the Court finds that as a matter of law the presumption of public use has not been rebutted.  Nothing in Mr. Greene's testimony demonstrates that the signs were posted at the gate or on the Road itself.  (R. Greene Dep. at 141:24-25; 146:22-23).  Moreover, Mrs. Greene testified that she recalls signs being placed only on trees in the surrounding woods, and that no signs were placed at the gate or on a stake in the Road.   (C. Greene Dep. at 57:4-57:25).  Therefore, at most the signs convey an intent to keep the woodland surrounding the Road private; they do not rebut the presumption that the Road has been dedicated for public use.  This is highlighted by the fact that notwithstanding the presence of private property signs in the Sun Valley Farm woodland, the public has continually used the Road for decades without interruption.  *See* Section II.C.i, *supra*.[12]

---

[11] For example, Mr. Greene does not know who installed signs that were eventually replaced by Tennessee Gas, nor can he definitively recall whether he personally observed private property signs while hiking in the area during the 1950s.  (*See* R. Greene Dep. at 144:9-15; 146:1-8).

[12] The Ramundos argue that a judgment declaring Bear Swamp Road to be a by-road would not be binding on them because they were joined as third-party defendants and are therefore not parties to this action.  This Court disagrees.  A third-party defendant is bound by a judgment in the underlying action because the third-party defendant possesses the right to assert any defenses against the plaintiff that the defendant would have.  *See* 6 C. *Wright, A. Miller & H. Cooper,*

Finally, the Court rejects the State's argument that Bear Swamp Road cannot be a by-road simply because no public entity has taken responsibility for its maintenance. While the public has a right of passage and repassage over a by-road, such a road does not impose upon the public a duty of maintenance. *See, e.g., Barile*, 186 N.J. at 597. Consequently, the Court concludes that Tennessee Gas and the other parties supporting by-road status are entitled to judgment as a matter of law.

## D. The Brizzolaras' Cross Motion for Summary Judgment

On January 22, 2013, this Court entered a preliminary injunction granting Tennessee Gas immediate possession of temporary access easements along Bear Swamp Road, which were required for the completion of Tennessee Gas' Northeast Upgrade Project. ECF. No. 40. The Brizzolaras have filed a cross-motion to vacate the preliminary injunction on the grounds that the completion date for the Project has expired. In response, Tennessee Gas argues that it must complete additional work in connection with the Project, and therefore the injunction is still required.

A preliminary injunction is appropriate where the moving party demonstrates: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Tennessee Gas Pipeline v. 0.018 Acres of Land in the County of Vernon*, No. 10-4465, 2010 WL 3883260, at *2. Moreover, a court may dissolve a preliminary injunction it has previously issued. *Sprint v. Comm. Co. L.P. v. CAT Comm. Int'l*, 335 F.3d 235, 241 (3d Cir. 2003). Vacating a preliminary injunction is appropriate where "changed circumstances warrant the discontinuation of the order." *Id*. at 242 (quoting *Twp. of Franklin Sewerage Auth. v. Middlesex County Utils. Auth*, 787 F.2d 117, 121 (3d Cir. 1986)).

Here, the Court previously entered a preliminary injunction in favor of Tennessee Gas because the company could not reach its pipeline facilities without gaining immediate possession of its temporary access easement rights. Because the Court has found that Bear Swamp Road is a by-road, Tennessee Gas can access its pipeline facilities without a preliminary injunction. Consequently, Tennessee Gas will not suffer irreparable harm absent the injunction, and dissolution of the injunction is appropriate.

---

*Federal Practice and Procedure* § 1457 (3d ed. 1998) (citing *Knell v. Feltman*, 174 F.2d 662 (D.C. Cir. 1949)). Moreover, the Ramundos' contention that they were deprived of an opportunity to engage in discovery rings hollow. Months before summary judgment motions were filed in this case, the Ramundos – who are represented by counsel – voluntarily entered into a "Stipulated Consent Order for Discovery," which outlined the parties' discovery obligations moving forward. ECF. No. 105. Therefore, the Ramundos had a say in the discovery schedule for this matter; they cannot now argue for the first time that they did not have an adequate opportunity for discovery.

### III.    CONCLUSION

For the foregoing reasons, the Court will enter summary judgment in favor of all parties who contend that Bear Swamp Road is a by-road.  Specifically, summary judgment will be entered in favor of Tennessee Gas, Algonquin, the County, and Yaw Paw.[13]   The Brizzolaras' cross-motion is also granted.


_____/s/ William J. Martini_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 4, 2015**

---

[13] Yaw Paw's cross-motion for summary judgment differs from the motions of Tennessee Gas, Bergen County, and Algonquin because it first argues for access to the Road under common law easement theories and then argues in the alternative for by-road status.  Because Bear Swamp Road is a by-road that Yaw Paw (and others) are permitted to use, the Court need not reach the issue of whether Yaw Paw has its own common law easement rights to traverse Bear Swamp Road.